UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ERNEST R. OLIVER, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:15-cv-00942-TWP-MPB |
| ) | |
| CAROLYN W. COLVIN, Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff, Ernest R. Oliver, Jr. ("Mr. Oliver") requests judicial review of the final decision of the Defendant, Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), wherein the Commissioner denied his application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.[1] For the reasons stated below, the Court **AFFIRMS** the Commissioner's final decision.

**I. BACKGROUND**

**A.  Procedural History**

On September 19, 2011, Mr. Oliver filed applications for DIB and SSI under Titles II and XVI of the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423(d), 1382 (2012). He alleged disability due to "nerve problems, anxiety, depression, and post-traumatic stress disorder", with an alleged onset date of February 1, 2008.

---

1 The regulations governing the determination of disability for Disability Insurance Benefits are found at 20 C.F.R. 401.1501 *et seq.*, while the Supplemental Security Income regulations are set forth at 20 C.F.R. 416.901 *et seq.* In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

On August 1, 2013, Mr. Oliver appeared in person and with counsel for a hearing before Administrative Law Judge Tammy Whitaker (the "ALJ"). Constance Brown, an impartial vocational expert also appeared and testified at the hearing. The ALJ issued a decision concluding that Mr. Oliver was not disabled under the Social Security Act. (Filing No. 12-2 at 21-39.) The ALJ determined that Mr. Oliver retained the Residual Functional Capacity ("RFC") to perform his previous work as a store laborer as well as other work that existed in significant numbers in the national economy, including a laundry worker, a housekeeper cleaner, and an office machine operator. (Filing No. 12-2 at 36-37.) The Appeals Council denied Mr. Oliver's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Filing No. 12-2 at 2-4.) On June 16, 2015, Mr. Oliver filed his complaint in this Court, requesting judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g)(2012).

**B.     Medical History**

In 2002, Mr. Oliver was the unfortunate victim of a carjacking, in which he was beaten and shot by his ear. The bullet did not damage his brain or lodge in his head, rather it grazed him. He had no surgery but was hospitalized following the incident. Although Mr. Oliver largely recovered from the physical injuries of the assault, he still lives with the mental injuries in the form of post-traumatic stress disorder (PTSD), depression, and panic attacks. Following the incident and after his alleged onset date, Mr. Oliver worked, (including at substantial gainful activity levels from February-April 2008), and he stopped working altogether in September 2011.

Mr. Oliver's first mental health consultative examination was not until October 3, 2011 with Dr. Bryan London. (Filing No. 12-10 at 72-79.) At that examination, Dr. London diagnosed Mr. Oliver with PTSD, Major Depressive Disorder, Single Episode, Moderate Severity, Anxiety Disorder-NOS, Alcohol Abuse-Early Full Remission, Cannabis Dependence-Early Full

Remission, R/O Cognitive Disorder-NOS. (*Id*. at 79.) Dr. London assessed Mr. Oliver's Global Assessment of Functioning ("GAF") score at 51.[2] (*Id*.) Dr. London suggested that Mr. Oliver would likely benefit from ongoing psychotherapy. (*Id*.)

The next day, on October 4, 2011, Mr. Oliver underwent a consultative physical examination with Dr. Wallace J. Gasiewicz. (*Id*. at 81-84.) Dr. Gasiewicz noted no functional limitations. (*Id*. at 83.) With respect to Mr. Oliver's mental limitations, Dr. Gasiewicz concluded that Mr. Oliver did not meet the depression scale criteria and had normal affect and mood. (*Id*.) Further, Dr. Gasiewicz reported that, despite Mr. Oliver's claims of lack of concentration, Mr. Oliver's memory and recall were normal. (*Id*.) He also noted that, "[Mr. Oliver] is very focused at present on the attack on his person years ago and states he thinks about it all the time, and getting worse", and "[h]e is definitely anxious about the past attack on him and is not getting any evaluation or treatment." (*Id*.)

On October 7, 2011, non-examining physician, Dr. Amy S. Johnson, completed a Mental RFC Assessment and concluded that Mr. Oliver had *mild* restrictions in activities of daily living and *moderate* restrictions in maintaining social functioning and in maintaining concentration, persistence, or pace. (*Id*. at 101.)

---

2 The Court notes that the most recent version of the *Diagnostic & Stat. Manual of Mental Disorders* ("DSM"), no longer uses GAF scores. *See* Am. Psychiatric Ass'n, *Diagnostic & Stat. Manual of Mental Disorders*, 16 (5th ed., 2013) (hereinafter "DSM-V") ("[i]t was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice").

The Social Security Administration and courts within this Circuit have repeatedly opined that a claimant's GAF scores, while used to make treatment decisions, do not directly correlate with the severity requirements of the regulations and that the ALJ is therefore not bound by them when determining disability. *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, at 50764-50765 (2000) ("[t]he GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings"); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *Wilkins v. Barnhart*, 69 Fed. App'x 775, 780 (7th Cir. 2003) (unpublished); *Sparks v. Colvin*, 1:14-CV-1519; 2015 WL 3618344, at *6 (S.D. Ind. 2015) ("[t]he [GAF] score has limited value in determining whether a [claimant] can engage in substantial gainful activity.").

On February 29, 2012, Mr. Oliver saw Dr. London for a second consultative examination. (*Id*. at 122-30.) At that examination, Dr. London diagnosed Mr. Oliver with PTSD-Provisional, Major Depressive Disorder, Single Episode, Moderate Severity-Provisional, Panic Disorder with Agoraphobia-Provisional, Anxiety Disorder-NOS-Provisional, Alcohol Abuse-Sustained Full Remission, Cannabis Dependence-Sustained Full Remission, R/O Cognitive Disorder-NOS. (*Id*. at 130.) Dr. London noted discrepancies between Mr. Oliver's reports and those from the previous examination, which "bring into question the reliability of the information obtained during [the] interview". (*Id*. at 123.) Dr. London reported that he obtained a "poor assessment" of Mr. Oliver's functioning, suggested that "malingering" could be responsible for Mr. Oliver's apparent borderline intellectual functioning, and noted that he was unable to assess Mr. Oliver's GAF. (*Id*. at 123, 130.)

On March 9, 2012, non-examining physician, Dr. Johnson, completed a second Mental RFC Assessment. (*Id*. at 135-47.) Dr. Johnson concluded that Mr. Oliver had *mild* restrictions in activities of daily living and in maintaining social functioning and had *moderate* restrictions in maintaining concentration, persistence, or pace. (*Id*. at 145.)

On January 3, 2012, Mr. Oliver began regular mental health treatment at Aspire Health. (Filing No. 12-11 at 39.) Over the next eighteen months, Mr. Oliver attended over thirty therapy and medication management appointments, including fourteen appointments with Dr. Betsy Rosiek. (Filing No. 14 at 9-13.)

Dr. Rosiek completed three Mental RFC Questionnaires on Mr. Oliver's behalf. In the first, on July 3, 2012, Dr. Rosiek opined that Mr. Oliver had *marked* restrictions in activities of daily living and *extreme* restrictions in maintaining social functioning and in maintaining concentration, persistence, or pace. (Filing No. 12-11 at 7.) Dr. Rosiek added that Mr. Oliver's

4

impairments were likely to cause him to miss more than four days per month at work. (*Id*. at 8.) In the second and third Questionnaires, on February 15, 2013 and June 24, 2013 respectively, Dr. Rosiek reached the same conclusions. (*Id*. at 57-64, 103-10.)

**C.      ALJ's Decision**

The ALJ found that, although Mr. Oliver had engaged in substantial gainful activity after the alleged onset date, there had also been a continuous 12-month period after the alleged onset date when Mr. Oliver had not engaged in substantial gainful activity. (Filing No. 12-2 at 25-26.) The ALJ concluded that Mr. Oliver had severe impairments but that his impairments did not, singly or in combination, meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. (Filing No. 12-2 at 15.)

Thereafter, the ALJ found that Mr. Oliver had the RFC to perform the full range of work at all exertional levels but with the following non-exertional limitations:

> The claimant could not tolerate exposure to a work environment with a noise level rating of 4 (i.e., loud noise) and 5 (i.e., very loud noise) as those noise level ratings are defined by the Dictionary of Occupational Titles and its companion publication. The work should be limited to simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements. The claimant could not tolerate interaction with the public, could tolerate only occasional interaction with coworkers and only occasional interaction with supervisors. The claimant could not perform tandem tasks with coworkers or with supervisors. The claimant is limited to work that allows the individual to be off task, on average, five percent of the workday in addition to regularly scheduled breaks. The claimant is limited to work that allows, on average, one absence per month with absence defined as failing to appear for a scheduled shift, tardy for a scheduled shift, or leaving early from a scheduled shift.

(Filing No. 12-2 at 31.) Based on this RFC determination and the Vocational Expert's testimony, the ALJ concluded that Mr. Oliver could perform his past work and could perform a significant number of other jobs in the national economy. (Filing No. 12-2 at 35-38.) As a result, the ALJ determined that Mr. Oliver was not disabled. (Filing No. 12-2 at 38.)

## II. LEGAL STANDARD

### A. Disability Determination

Under the Social Security Act, a claimant is entitled to DIB or SSI if he establishes he has a disability. 42 U.S.C. §§ 423(a)(1)(E), 1382 (2012). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A) (2012). To justify a finding of disability, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but also any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (2012).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id*. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three of the sequential analysis, the ALJ must determine whether the claimant's impairment or combination of impairments meets or equals the criteria for any of the conditions included in 20 C.F.R. Part 404, Subpart P, App'x 1 (the "Listings"). 20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1. The Listings are medical conditions defined by criteria that the Social Security Administration has pre-determined to be disabling. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); 20 C.F.R. §§ 404.1525(a), 416.925(a). *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1. For each Listing, there are objective medical findings and other findings that must be met or medically equaled to satisfy the criteria of that Listing. 20 C.F.R. §§ 404.1525(c)(2)-(5), 416.925(c)(2)-(5).

If the claimant's impairments do not meet or medically equal a Listing, then the ALJ assesses the claimant's residual functional capacity for use at steps four and five. 20 C.F.R. §§ 404.1520(e), 416.920(a)(4)(iv). Residual functional capacity is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1).

At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the ALJ determines whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (2012). The claimant is not disabled if he can perform any other work in the relevant economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (2012). The combined effect of all of a claimant's impairments shall be considered throughout the disability determination process. 42 U.S.C. §§ 423(d)(2)(B); 1382c(a)(3)(G) (2012). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner at the fifth step. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**B.     Review of the Commissioner's Final Decision**

When the Appeals Council denies review, the ALJ's ruling becomes the final decision of the Commissioner. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009); *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). Thereafter, in its review, the district court will affirm the Commissioner's findings of fact if they are supported by substantial evidence. 42 U.S.C. § 405(g)(2012); *Craft*, 539 F.3d at 673; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon*, 270 F.3d at 1176; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). *See also Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (substantial evidence must be "more than a scintilla but may be less than a preponderance.").

In this substantial-evidence determination, the district court does not decide the facts anew, re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Accordingly, if the Commissioner's decision is adequately supported and reasonable minds could differ about the disability status of the claimant, the court must affirm the decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Ultimately, the sufficiency of the ALJ's articulation aids the court in its review of whether the Commissioner's final decision was supported by substantial evidence. *See Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985) ("[t]he ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do"). While, the ALJ need not evaluate every piece of testimony and evidence submitted in writing, the ALJ's decision must, nevertheless, be based upon consideration of all the relevant

evidence. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). In this vein, the ALJ may not discuss only that evidence that favors his ultimate conclusion but must also confront evidence that contradicts his conclusion and explain why the evidence was rejected. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

Further, the ALJ's decision must adequately demonstrate the path of reasoning, and the evidence must lead logically to the ALJ's conclusion. *Terry*, 580 F.3d at 475; *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). To affirm the Commissioner's final decision, "the ALJ must build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 888–89 (7th Cir. 2001); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

### III. DISCUSSION

Mr. Oliver alleges that the ALJ committed multiple errors when assessing the alleged disabling impact of his severe limitations. Specifically, Mr. Oliver alleges that the ALJ placed too much emphasis on his former alcohol and cannabis dependence; did not consider all of his mental impairments; did not adequately articulate the Listing determination; and failed to give controlling weight to Dr. Rosiek's opinions. The Court will discuss each issue in turn.

**A.    Severe Impairments**

Mr. Oliver asserts two challenges to the ALJ's determination of his severe impairments, neither of which is compelling.

   **1.    Alcohol Abuse and Cannabis Dependence**

First, Mr. Oliver contends that the ALJ should not have found his past alcohol abuse and cannabis dependence to be severe impairments. In support, Mr. Oliver notes that Dr. London's February 29, 2012 examination reflects that Mr. Oliver received diagnoses of Alcohol Abuse-Sustained Full Remission, Cannabis Dependence-Sustained Full Remission. (Filing No. 12-10 at

130.) Mr. Oliver argues that the ALJ's determination that his prior substance abuse remained a severe impairment was "prejudicial . . . by attempting to diminish [Mr. Oliver's] credibility based on perceived undesirable behavior of years past". (Filing No. 14 at 18.)

Upon reviewing the ALJ's opinion, the ALJ does not address Mr. Oliver's substance abuse at any other point. As a result, contrary to Mr. Oliver's assertions, there is no indication that the ALJ's finding that Mr. Oliver's substance abuse was a "severe impairment" had any impact on the ALJ's credibility determination. The only exception to this is the ALJ's additional finding that Mr. Oliver had "engaged in possible drug seeking behavior", noting Mr. Oliver's attempt to obtain *narcotic* pain medications, rather than alcohol or marijuana, from an emergency room doctor in 2008. (Filing No. 12-2 at 33) (citing Filing No. 12-2 at 40.) Notably, Mr. Oliver does not challenge the ALJ's reliance on this evidence to discount his credibility.

Rather than discussing Mr. Oliver's past alcohol and cannabis use to discount his credibility, the ALJ discussed several other reasons in support of his credibility determination. In particular, the ALJ noted Dr. London's opinion that Mr. Oliver was over-reporting his mental impairments and was offering such inconsistent reports that Dr. London did not consider it possible to obtain a reliable assessment of his limitations. (Filing No. 12-2 at 33-34.) In addition, the ALJ noted that Mr. Oliver was not forthcoming about his previous work history during the hearing, acknowledging that he had worked "under the table" at a roofing job only when pressed by the ALJ. (*Id*. at 34.)

As a result, the Court does not agree that the ALJ's decision to include Mr. Oliver's alcohol abuse and cannabis dependence as severe impairments in any way prejudiced the ALJ's disability determination, particularly with regards to Mr. Oliver's credibility.

### 2. Panic Attacks, Agoraphobia, Concentration

Second, Mr. Oliver argues that the ALJ should have found his panic attacks, agoraphobia and concentration issues to be severe impairments. In this regard, the Court first notes that the ALJ did not include Mr. Oliver's panic attacks, agoraphobia, and cognitive/intellectual issues as severe impairments, in part, because of Mr. Oliver's own poor reporting during Dr. London's examination. (*See* Filing No. 12-2 at 27) ("[a]lthough a provisional diagnosis of panic disorder with agoraphobia was proposed . . ., a conclusion was never reached") (citing Filing No. 12-10 at 130.) In Dr. London's report, Mr. Oliver's panic attack and agoraphobia diagnoses were listed as "provisional" because Dr. London suspected "the possibility of malingering" and was unable to get a reliable assessment of Mr. Oliver's functioning due to Mr. Oliver's inconsistent statements. (*See* Filing No. 12-10 at 123, 130.) Similarly, Dr. London noted "discrepancies" in Mr. Oliver's reported attention and concentration and suggested against intelligence testing because of suspected malingering. (*Id*. at 123, 129-30.)

Contrary to Mr. Oliver's assertions, the ALJ's decision reveals significant discussion of Mr. Oliver's panic attacks, agoraphobia, and concentration issues, including adding specific limitations for each in his RFC determination.[3] For example, the ALJ specifically discussed Mr.

---

3 In addition, the Court notes that the ALJ also included Mr. Oliver's diagnosed Anxiety Disorder Not Otherwise Specified as a severe impairment, which appears to include both panic and agoraphobia as possible symptoms. (*Id*. at 26.) According to the DSM-IV-TR, Anxiety Disorder Not Otherwise Specified "includes disorders with prominent anxiety or phobic avoidance that do not meet criteria for any specific Anxiety Disorder". *DSM-IV-TR* at 32-33. In addition, the DSM-IV-TR indicates that this diagnosis may be found in such situations, in which,

> the disturbance is severe enough to warrant a diagnosis of an Anxiety Disorder but the individual fails to report enough symptoms for the full criteria for any specific Anxiety Disorder to have been met; for example, an individual who reports all of the features of Panic Disorder Without Agoraphobia except that the Panic Attacks are all limited-symptom attacks.

*Id*. As such, the ALJ's inclusion of Anxiety Disorder Not Otherwise Specified as a severe impairment suggests consideration of Mr. Oliver's panic attacks and agoraphobia, even if the ALJ did not separately list them as additional severe impairments.

Oliver's testimony regarding these impairments, the diagnoses made by the state agency physicians, and the conclusions made in Dr. Rosiek's Mental RFC Questionnaires. (*See Id*. at 27, 29-30, 32, 35.) The ALJ also assessed Mr. Oliver with mild restrictions of daily living, moderate difficulties with social functioning, and moderate difficulties with concentration, persistence, and pace. (*Id*. at 30.)

Further, the ALJ accounted for Mr. Oliver's panic attacks, agoraphobia, and concentration issues in his RFC determination. Specifically, the ALJ included the following limitations in his RFC:

> The work should be limited to simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements. The claimant could not tolerate interaction with the public, could tolerate only occasional interaction with coworkers and only occasional interaction with supervisors. The claimant could not perform tandem tasks with coworkers or supervisors. The claimant is limited to work that allows the individual to be off task, on average, five percent of the workday in addition to regularly scheduled breaks.

(*Id*. at 31.) In addition, the ALJ explained his reasons for including these limitations as follows:

> He does have work restrictions from his mental impairments, such as, depression and anxiety. These involve working with other people. However, the preclusion from working with the public and the limitations of his interactions with supervisors and coworkers as described in the assessed residual functional capacity will accommodate the degree of impairment documented in the record. While the record also shows compromised attention, concentration and pace, the limitations described in the assessed residual functional capacity adequately address these issues. . . . As a precaution for any flares in his combination of mental health symptoms, the claimant is also limited to work that allows on average for one absence per month as described in the assessed residual functional capacity.

(*Id*. at 31-32.)

Finally, and most compelling, Mr. Oliver does not explain either what evidence the ALJ failed to consider with regards to his panic attacks, agoraphobia, and concentration, or what additional limitations the ALJ should have included as a result. The Court concludes that the ALJ properly considered and accounted for the limiting effects of these additional impairments, and no

12

reversible error in the ALJ listing them as severe impairments.

**B.** **Listed Impairments**

Mr. Oliver argues that the ALJ erred by not fully discussing the Listings 12.04, 12.06 and 12.09. In particular, Mr. Oliver challenges the fact that the ALJ skipped the Subpart A criteria and solely evaluated the Subpart B and Subpart C criteria.

At step three of the sequential analysis, the ALJ must determine whether the claimant's impairment or combination of impairments meets or equals the criteria for any of the conditions included in 20 C.F.R. Part 404, Subpart P, App'x 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1. The Listings are medical conditions defined by criteria that the Social Security Administration has pre-determined to be disabling. *Barnett*, 381 F.3d at 668; 20 C.F.R. §§ 404.1525(a), 416.925(a). *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1. For each Listing, there are objective medical findings and other findings that must be met or medically equaled to satisfy the criteria of that Listing. 20 C.F.R. §§ 404.1525(c)(2)-(5), 416.925(c)(2)-(5).

Mr. Oliver's argument is unavailing, as the test for meeting or equaling Listings 12.04 and 12.06 is a conjunctive one, meaning that Mr. Oliver must satisfy the either the Subpart A criteria and the Subpart B or the Subpart C criteria. *See* 20 C.F.R. Part 404, Subpart P, App'x 1-Part-A2 (providing the criteria for Listings 12.04 and 12.06). Further, the test for meeting or equaling Listing 12.09 requires a finding of a mental impairment based under another Listing with the additional requirement that the impairment be the result of substance abuse. *See* 20 C.F.R. Part 404, Subpart P, App'x 1-Part-A2 (providing the criteria for Listing 12.09). In her decision, the ALJs concluded that Mr. Oliver's impairments did not satisfy either the Subpart B or Subpart C criteria of either Listing 12.04 or 12.06. (*See* Filing No. 12-2 at 30-31.) As such, the ALJ was

justified in not specifically discussing the Subpart A criteria, as the additional analysis was unnecessary. Similarly, without evidence of a mental disorder listing, the ALJ was also justified in not discussing listed impairment 12.09 in greater detail.

In addition, Mr. Oliver fails to identify evidence to counter the ALJ's Listing conclusions. It is Mr. Oliver's burden to present medical evidence to demonstrate that his impairments satisfy all of the requirements in a Listing. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *Knox v. Astrue*, 327 Fed. App'x 652, 655 (7th Cir. 2009) (unpublished opinion) ("[a]lthough an ALJ should provide a step-three analysis, a claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing"). As a result, the Court concludes that the ALJ did not err in her consideration of the relevant listed impairments.

C. **Treating Physician**

Lastly, Mr. Oliver argues the ALJ erred by failing to give the opinions of his treating physician controlling weight. A treating physician's opinion regarding the nature and severity of a medical condition is ordinarily entitled to controlling weight if the opinion is well supported by the medical findings and is consistent with substantial evidence in the record. *See Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); 20 C.F.R. § 404.1527(c)(2). More weight is generally afforded a treating physician's opinion because he is more familiar with the claimant's conditions and circumstances. *Clifford*, 227 F.3d at 870; 20 C.F.R. § 416.927(c)(2).

While the treating physician's opinion is important, it is not the final word on a claimant's disability. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); 20 C.F.R. § 404.1527(d)(1). Accordingly, if a treating physician's medical opinion is internally inconsistent or inconsistent with other evidence in the record, an ALJ is entitled to give the opinion lesser weight. *Schmidt*, 496 F.3d at 842. Indeed, when evidence in opposition to the presumption is introduced, the rule

drops out and the treating physician's opinion becomes "just one more piece of evidence for the ALJ to weigh." *Hofslien*, 439 F.3d at 377.

An ALJ's decision to give lesser weight to a treating physician's opinion is afforded deference, as long as the ALJ minimally articulates his reasons for doing so. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2011); *Copeland v. Astrue*, 3:09-CV-431-JD, 776 F. Supp. 2d 828, 836 (N.D. Ind. Mar.1, 2011); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination of decision for the weight we give your treating source's opinion."). The Seventh Circuit has characterized this deferential standard as "lax." *Berger*, 516 F.3d at 545; *Brown v. Astrue*, No. 1:10-CV-1035-SEB, 2011 WL 2693522, *3 (S.D. Ind. July 8, 2011).

Once an ALJ decides to give lesser weight to a treating physician's opinion, the ALJ still must determine what weight the physician's opinion is due under the applicable regulations. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); 20 C.F.R. § 404.1527(c)(2). Factors the ALJ should consider when determining the weight to give the treating physician's opinion include the length, nature, and extent of the treatment relationship, whether the physician supported his opinion with sufficient explanations, and whether the physician specializes in the medical conditions at issue. *See Elder*, 529 F.3d at 415-16; 20 C.F.R. 404.1527(c)(2).

Dr. Rosiek provided three Mental RFC Questionnaires, wherein she concluded that Mr. Oliver had *marked* restrictions in activities of daily living and *extreme* restrictions in maintaining social functioning and in maintaining concentration, persistence, or pace. (Filing No. 12-11 at 7-8, 57-64, 103-10.) In addition, Dr. Rosiek reported that Mr. Oliver's impairments were likely to cause him to miss more than four days per month at work. (*Id.*)

In her decision, however, the ALJ provided multiple reasons for discounting Dr. Rosiek's Mental RFC Questionnaires. Specifically, the ALJ evaluated Dr. Rosiek's opinions as follows:

> Dr. Rosiek's opinion is extreme in nature. There is no other opinion of record indicating that the claimant's limitations even approach those specified by Dr. Rosiek. Further, it is not consistent with the mental status examinations reported by Aspire, which is the agency providing the claimant's mental health treatment. These reports generally show that the claimant is cooperative and polite, is adequately groomed, is oriented, has appropriate and unremarkable thought content, has logical, coherent and sequential thought processes, has normal speech, has a fair and intact memory, has average intellectual functioning and has normal psychomotor behavior. These findings are consistent with the findings of Dr. Gasiewicz and from Dr. London. Further, Dr. Rosiek actually reports global assessment of functioning scores of 55. These scores are indicative of moderate symptoms or moderate difficulty in social, occupational or school functioning rather than the extreme problems reported by Dr. Rosiek. The global assessment of functioning scores of 55 are also consistent with the clinical records. Dr. Rosiek has seen the claimant only since January 2012. Dr. Rosiek's responses regarding the number of absences is unsupported by the totality of the medical evidence and speculative in nature. In addition, Dr. Rosiek relies, in part, upon the claimant's reports. While Dr. Rosiek's opinions have been considered, they are not assigned significant weight for these reasons.

(Filing No. 12-2 at 35) (internal citations omitted).

The ALJ's analysis is well-developed and adequately supported by evidence in the record. *See Craft*, 539 F.3d at 673 ("[t]he ALJ is not required to mention every piece of evidence but must provide an accurate and logical bridge between the evidence and the conclusion"); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 1997) (noting that an ALJ "must articulate, at least minimally, his analysis of the evidence so that this court can follow his reasoning").

Although the ALJ provided seven independent reasons for discounting Dr. Rosiek's opinions, Mr. Oliver challenges just one. Mr. Oliver contends that the Aspire treatment records actually support Dr. Rosiek's findings. However, a review of the identified evidence does not suggest err by the ALJ. For instance, most of the evidence cited by Mr. Oliver in support of his argument are treatment notes that appear to reflect Mr. Oliver's own statements rather than vocational conclusions made by Mr. Oliver's mental health counselors. (*See, e.g.*, Filing No. 12-11 at 33, 36, 73, 84, 87; Filing No. 14 at 23-26.) Further, much of the remaining evidence that Mr.

16

Oliver cites is Dr. Rosiek's own treatment notes and observations, which do not provide *corroborating* support for her opinions.  (*See* Filing No. 14 at 23-26.)  Finally, although the Aspire treatment notes include GAF scores as low as 45, the ALJ cited Dr. Rosiek's own GAF assessment of 55 which was higher.  (*See* Filing No. 12-2 at 35.)

The Court is not persuaded that the ALJ improperly discounted the opinions of Mr. Oliver's treating physician or that the ALJ improperly ignored evidence in reaching her conclusion.  Rather, the Court finds that the ALJ's decision is adequately supported and sufficiently articulated.

The ALJ did not err in her determination of Mr. Oliver's severe impairments, in her evaluation of the relevant listed impairments, or in her decision to afford lesser weight to Mr. Oliver's treating physician.  Accordingly, remand is inappropriate.

### IV.  CONCLUSION

For the reasons stated above, the Court **DENIES** Mr. Oliver's request for remand and **AFFIRMS** the Commissioner's final decision.  Final judgment will be issued by a separate order.

**SO ORDERED.**

Date: 6/23/2016

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jennifer Michelle Hess
PETIT & HESS
jen.hess@hhdlegal.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov